## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

**In Re:**

| | |
|---|---|
| **TCR III, INC. (f/k/a America House One, Inc.),** EIN:  54-1910021 | **Case No.  15-14162-BFK** |
| **TCR IV, INC. (f/k/a America House Two, Inc.),** EIN:  54-1892641 | **Case No.  15-14163-BFK** |
| **TCR V, INC. (f/k/a America House Three, Inc.),** EIN:  54-1914323 | **Case No.  15-14165-BFK** |
| **TCR VI, INC., and** EIN:  76-0801398 | **Case No.  15-14168-BFK** |
| **AMERICA HOUSE ASSISTED LIVING OF FRONT ROYAL, L.L.C.,** EIN:  54-2023050 | **Case No.  15-14169-BFK** |
| **Debtors.** | **Chapter 11** |

### DECLARATION OF CHARLES V. RICE
### IN SUPPORT OF INITIAL MOTIONS

I, Charles V. Rice, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1.      Directly or indirectly through TCR I, Inc. (f.k.a America House, Inc.), I manage the operations of debtors TCR III, Inc. (f/k/a America House One, Inc.) (a/k/a Amerisist of Manassas); TCR IV, Inc. (f/k/a America House Two, Inc.) (a/k/a Amerisist of Orange); TCR V, Inc. (f/k/a America House Three, Inc.) (a/k/a Amerisist of Stephens City); TCR VI, Inc.; and America House Assisted Living of Front Royal, L.L.C. (a/k/a Amerisist of Front Royal) (each individually "**Debtor**" and collectively "**Debtors**").  I have been associated with the Debtors since inception, and I am familiar with the Debtors' operations, business affairs, and books and records.

2.      On November 24, 2015 (the "**Petition Date**"), each of the above-identified debtors filed voluntary petitions seeking relief pursuant to Chapter 11 of the United States Bankruptcy Code in an effort to protect the health, safety and welfare of its residents, and preserve and maximize the value of Debtor's assets.  Each debtor continues to manage and

operate their respective business as a debtor-in-possession in accordance with 11 U.S.C. §§ 1107

and 1108.  No creditor's committee, trustee, or examiner has been appointed in any of the cases.

　　　　3.　　　Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.[1]  More

specifically: venue in this District is proper for TCR III, Inc. (located in Manassas, which is an

independent city surrounded by Prince William County, VA) pursuant to 28 U.S.C. § 1408(1);

and venue in this District is proper for TCR IV, Inc. (located in Orange, which is a town in

Orange County, VA), TCR V, Inc. (located in Stephens City, which is an incorporated town in

Frederick County, VA), TCR VI, Inc. (located in Front Royal, which is a town in Warren

County, VA), and America House Assisted Living of Front Royal, L.L.C. (located in Front Royal,

which is a town in Warren County, VA) pursuant to 28 U.S.C. § 1408(2) because they are

affiliates of TCR III, Inc. (*i.e.*, all of the debtors are directly or indirectly by TCR I, Inc., which

in turn is solely owned by Charles V. Rice).[2]

　　　　4.　　　This Declaration is submitted in support of the Debtors' voluntary petitions and

each of the motions describe below (the "**Initial Motions**").  Except as otherwise indicated, all

---

[1]  28 U.S.C. § 1408, which applies in chapter 11 cases, provides:

　　　　　　Except as provided in section 1410 of this title, a case under title 11
　　　　　　may be commenced in the district court for the district—

　　　　　　　　**(1)** in which the domicile, residence, principal place of business in the
　　　　　　United States, or principal assets in the United States, of the person or entity that
　　　　　　is the subject of such case have been located for the one hundred and eighty
　　　　　　days immediately preceding such commencement, or for a longer portion of
　　　　　　such one-hundred-and-eighty-day period than the domicile, residence, or
　　　　　　principal place of business, in the United States, or principal assets in the United
　　　　　　States, of such person were located in any other district; or

　　　　　　　　**(2)** in which there is pending a case under title 11 concerning such
　　　　　　person's affiliate, general partner, or partnership.

28 U.S.C. § 1408.

[2]  Ownership is as follows:
- TCR III, Inc., TCR IV, Inc., and TCR V, Inc. are solely owned by TCR I., Inc.;
- TCR VI, Inc., is solely owned by TCR III, Inc., which in turn is solely owned by TCR I, Inc.; and
- America House Assisted Living of Front Royal, L.L.C. is solely owned by America House Assisted Living, LLC, which in turn is solely owned by TCR I, Inc.

statements set forth in this Declaration are based upon my personal knowledge, my review of relevant records and documents, information from the Debtors' employees or advisors, or my opinion based on my experience and knowledge of the Debtors' operations and financial condition.  If called upon to testify, I could and would testify competently to the facts set forth in this Declaration.

5.     Based on my personal knowledge and the review discussed above, I believe that the relief sought by the Debtors in the Initial Motions is necessary to enable its chapter 11 estates to be administered effectively.  I further believe the failure to grant such relief would have a serious, negative effect on the health, safety and welfare of Debtors' residents, and Debtors' efforts to continue operating during its chapter 11 case while pursuing reorganization or sale as a going concern.  Part I of this Declaration describes the business of the Debtors, the debt structure, and key events leading to the filing of Debtors' chapter 11 petitions.  Part II of this Declaration sets forth relevant facts in support of the various Initial Motions filed by the Debtors concurrently with this Declaration.

## I.     GENERAL BACKGROUND

**A.     Overview of Debtor's Business.**

6.     Debtor TCR III, Inc. ("**TCR III**"), is a Virginia corporation licensed by the Virginia Department of Social Services to operate an assisted living facility for up to 27 residents at 10140 Hastings Drive, Manassas, Virginia 20110 (the "**Manassas Facility**").  TCR III owns the Manassas Facility.

7.     Debtor TCR IV, Inc. ("**TCR IV**") is a Virginia corporation licensed by the Virginia Department of Social Services to operate an assisted living facility for up to 31 residents

3

at 680 University Lane, Orange, Virginia 22960 (the "**Orange Facility**").  TCR IV owns the Orange Facility.

8.      Debtor TCR V, Inc. ("**TCR V**") is a Virginia corporation licensed by the Virginia Department of Social Services to operate an assisted living facility for up to 46 residents at 110 Spanish Oak Road, Stephens City, Virginia 22665 (the "**Stephens City Facility**").  TCR V owns the Stephens Facility.

9.      Debtor American House Assisted Living of Front Royal, L.L.C. ("**America House Front Royal**") is a Virginia limited liability company licensed by the Virginia Department of Social Services to operate an assisted living facility for up to 27 residents at 106 Westminster Drive, Front Royal, Virginia 22630 (the "**Front Royal Facility**") (together with the Manassas Facility, the Orange Facility and the Stephens City Facility, the "**Facilities**").  America House Front Royal owns the Front Royal Facility.  America House Front Royal was previously reorganized in a chapter 11 bankruptcy.  *See In America House Assisted Living Facility of Front Royal, L.L.C.,* No. 03-13784-RGM (Bankr. E.D. Va.).

10.      Debtor TCR VI, Inc. ("**TCR VI**") is a Virginia corporation with a mailing address of 400A Kendrick Lane, Front Royal, Virginia 22630.  TCR VI is wholly owned by TCR III.  TCR VI was formed to manage one or more Facilities, but never took over management of any of the Facilities.

11.      For each of the Debtors except TCR VI, the residents in the Facilities are elderly people who rely on the Debtors for their every need.  Debtors enter into contracts with residents on a month to month basis.

**B.**     **Debtor's Debt Structure.**

**1.  TCR III.**

12.     In the State Court Action, TC10 Trust alleges that it is the owner and holder of a Deed of Trust Note, dated March 31, 1999, made by America House One, Inc. (TCR III's predecessor-in-interest), in the original amount of $2,077,400.00 ("**TCR III Note**").  TC10 Trust further alleges that the TCR III Note is secured by a Deed of Trust on the Manassas Facility ("**Manassas Facility DOT**"), and by a Security Agreement and certain financing statements encumbering all personal property of TCR III, including, without limitation, inventory, accounts, rents, equipment, furniture, furnishings, and intangibles (the "**Manassas Facility Personal Property**").

13.     On August 1, 2005, TC10 Trust and TCR III (together with other related debtor-entities) entered into a Forbearance Agreement that, among other things provided for the formation of TCR VI to manage the facilities, and in which the TC10 Trust agreed to forbear from exercising foreclosure rights until December 1, 2006.

14.     On October 1, 2007, TC10 Trust and TCR III (together with other related debtor-entities) entered into a Second Forbearance Agreement that among other things extended the "due and payable" date of the TCR III Note.

15.     In the State Court Action, TC10 Trust alleges that, as of May 1, 2015, the outstanding balance of the TCR III Note is $2,829,672.57, exclusive of attorneys' fees and costs.

**2.  TCR IV.**

16.     In the State Court Action, TC10 Trust alleges that it is the owner and holder of a Deed of Trust Note, dated February 25, 1999, made by America House Two, Inc. (TCR IV's predecessor-in-interest), in the original amount of $2,295,000.00 ("**TCR IV Note**").  TC10 Trust

further alleges that the TCR IV Note is secured by a Deed of Trust on the Orange Facility ("**Orange Facility DOT**") and by a Security Agreement and certain financing statements encumbering all personal property of TCR IV, including, without limitation, inventory, accounts, rents, equipment, furniture, furnishings, and intangibles (the "**Orange Facility Personal Property**").

17.     On August 1, 2005, TC10 Trust and TCR IV (together with other related debtor-entities) entered into a Forbearance Agreement that, among other things provided for the formation of TCR VI to manage the facilities, and in which the TC10 Trust agreed to forbear from exercising foreclosure rights until December 1, 2006.

18.     On October 1, 2007, TC10 Trust and TCR IV (together with other related debtor-entities) entered into a Second Forbearance Agreement that among other things extended the "due and payable" date of the TCR IV Note.

19.     In the State Court Action, TC10 Trust alleges that, as of May 1, 2015, the outstanding balance of the TCR IV Note is $2,377,658.53, exclusive of attorneys' fees and costs.

**3.    TCR V.**

20.     In the State Court Action, TC10 Trust alleges that it is the owner and holder of a Deed of Trust Note, dated July 18, 2000, made by America House Three, Inc. (TCR V's predecessor-in-interest), in the original amount of $3,029,000.00 ("**TCR V Note**").  TC10 Trust further alleges that the TCR V Note is secured by a Deed of Trust on the Stephens City Facility ("**Stephens City Facility DOT**") and by a Security Agreement and certain financing statements encumbering all personal property of TCR V, including, without limitation, inventory, accounts, rents, equipment, furniture, furnishings, and intangibles (the "**Stephens City Facility Personal Property**").

21.     On August 1, 2005, TC10 Trust and TCR V (together with other related debtor-entities) entered into a Forbearance Agreement that, among other things provided for the formation of TCR VI to manage the facilities, and in which the TC10 Trust agreed to forbear from exercising foreclosure rights until December 1, 2006.

22.     On October 1, 2007, TC10 Trust and TCR V (together with other related debtor-entities) entered into a Second Forbearance Agreement that among other things extended the "due and payable" date of the TCR V Note.

23.     In the State Court Action, TC10 Trust alleges that, as of May 1, 2015, the outstanding balance of the TCR III Note is $4,812,941.41, exclusive of attorneys' fees and costs.

**4.  America House Front Royal.**

24.     In the State Court Action, TC Cambridge Trust alleges that it is the owner and holder of a Deed of Trust Note, dated March 2, 2001, made by America House Front Royal, in the original amount of $2,111,250.00 (the "**America House Front Royal Note**").  TC Cambridge Trust further alleges that the America House Front Royal Note is secured by a Deed of Trust on the Front Royal Facility ("**Front Royal Facility DOT**") and by a Security Agreement and certain financing statements encumbering all personal property of TCR III, including, without limitation, inventory, accounts, rents, equipment, furniture, furnishings, and intangibles (the "**Front Royal Facility Personal Property**").

25.     In the State Court Action, TC10 Trust alleges that, as of May 1, 2015, the outstanding balance of the America House Front Royal Note is $4,812,941.41, exclusive of attorneys' fees and costs.

**C.      Events leading to the Filing.**

26.      On or about May 28, 2015, TC10 Grantor Trust ("**TC10 Trust**") and TS Cambridge Grantor Trust ("**TS Cambridge Trust**") (together with TC10 Trust, the "**Secured Parties**") filed a complaint in state court against the Debtors seeking, among other things, appointment of a receiver to take immediate custody and control of each of the Debtors pending the Secured Parties sale of the Debtors' real and personal property.  *See TC10 Grantor Trust v. TCR III, Inc.*, No. CL15-3871 (Cir. Ct. Prince William County) (the "**State Court Action**").

27.      Debtors filed bankruptcy on November 24, 2015, which stayed a hearing in the State Court Action scheduled for November 30, 2015.

**D.      Health, safety and welfare of residents.**

28.      The residents in Debtors' Facilities are elderly people who rely on the Debtors for their every need (including direct and ongoing contact with residents to provide shelter, sustenance, and medical treatment).  The bankruptcies were in response to the Secured Parties attempts to appoint a Receiver rather than patient care issues.  The Office of the US Trustee has conducted on-site visits at some of the Facilities to observe operations.  Debtors intend to continue very high quality care for residents at the Facilities without interruption while they reorganize their finances.  All licenses for the operation of the Facilities have been renewed on schedule without comment by the State or County (other than for minor operational deficiencies, all subsequently corrected).

## II.      INITIAL MOTIONS

29.      I reviewed each of Initial Motions and participated in the preparation thereof.  I believe that, to the best of my knowledge, the facts set forth in the voluntary petition and the Initial Motions are true and correct.  This representation is based upon information and belief,

and through review of various materials and information, as well as my experience and knowledge of Debtors' operations and financial conditions.  Based upon the foregoing, if called to testify, I could and would, testify competently to the facts set forth in each of the Initial Motions.

30.     I believe the relief requested in each of the Initial Motions is necessary to ensure that the Debtors' immediate operational needs are met and that the residents will not suffer immediate and irreparable harm.

**A.     Motion for Expedited Hearing on Initial Motions.**

31.     I have carefully examined the matters in the Initial Motions and conclude that there is a true need for an emergency hearing, the Debtors did not create the emergency hearing through lack of diligence, and have made a *bona fide* effort to resolve the matters without hearings.

**B.     Motion concerning BAPCPA healthcare provisions.**

32.     Debtors' primary concern is the health, safety and welfare of the elderly residents residing at the Facilities.

33.     The Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") added two healthcare provisions that Debtors wish to bring to the court's attention.

34.     Section 333. Appointment of patient care ombudsman: Under the specific facts of the case, Debtors do not believe that the appointment pursuant to Bankruptcy Code § 333 of such ombudsman is necessary for the protection of the patients and would rather spend funds on care of the patients than an ombudsman.  Notwithstanding, Debtors understand the Court, in an abundance of caution, may wish to appoint such person.

35.     <u>Section 351. Disposal of patient records</u>: Debtors believe Bankruptcy Code § 351 are not applicable because they have no intention of destroying patient records.  Rather, Debtors intend to reorganize and have sufficient funds to pay for the storage of patient records in the manner required under applicable Federal or State law.

**C.     Motion for Authority to Use Cash Collateral.**

36.     Debtors have engaged in a reasonable exploration of the availability of alternate credit and, except for possibly borrowing some funds from affiliates, are unable to obtain post-petition credit.   Because a substantial amount, if not all, of Debtors' assets are already encumbered with liens granted to the Secured Parties to secure debts incurred prior to the Petition Date, Debtors are unable to obtain, in the ordinary course of business or otherwise, unsecured credit allowable pursuant to Bankruptcy Code § 503(b)(1) as an administrative expense in an amount necessary for the maintenance and preservation of  assets and operation of their businesses on more advantageous economic and non-economic terms than those offered under the Proposed Order.

37.     Entry of the Proposed Order is in the best interests of the Residents, Debtors, its creditors and estate, and will enable Debtors, among other things, to (a) pay employees and trade creditors, (b) maintain continuity of operations, and (c) facilitate a smooth transition into a successful reorganization.

38.     Moreover, Debtors submit that the use of cash collateral contemplated by the Proposed Order is appropriate and proper under the facts herein.  As indicated above, Debtors need use of all cash collateral to prevent imminent and irreparable harm in so far as it cannot care for the residents post-petition without the use of cash collateral.

D.    **Motion to Pay Prepetition Wages.**

39.    Payroll is paid every two weeks.  Debtors process payroll in-house or through an

affiliate (*i.e.*, Debtors do not use a third-party payroll service).  Gross payroll paid on November

27, 2015 (for hourly employees covering the period 11/01/15 to 11/14/15 and salary employees

covering 11/08/15 to 11/21/15) is summarized as follows:

| Debtors | Hourly Employees | | Salary |
| | Gross Payroll | Employer Taxes | Gross Payroll |
| --- | --- | --- | --- |
| TCR III, Inc. | $10,030.22 (18 employees) | $1,067.05 | .00 (0 employees) |
| TCR IV, Inc. | 8,624.53 (19 employees) | 881.16 | 1,200.00 (1 employee) |
| TCR V, Inc. | 10,630.02 (21 employees) | 1,140.15 | 2,046.20 (1 employee) |
| TCR VI, Inc. | .00 (0 employees) | .00 | .00 (0 employees) |
| Front Royal. | 8,486.17 (22 employees) | 1,052.80 | .00 (0 employees) |

40.    Debtors' payroll to be paid on December 11, 2015 is expected to be comparable in

amount to that paid on November 27, 2015.

41.    None of the Debtors' payroll is for Charles V. Rice (debtor designee) nor any

other insider (as that term is defined in 11 U.S.C. § 101(31)).

42.    Upon information and belief, any delay in paying the prepetition payroll will

severely disrupt Debtor's relationship with its employees and irreparably impair their morale, at

a time when their dedication, confidence and cooperation are most critical.  If the relief requested

herein were not granted, many of the employees would suffer financial difficulties as these

monies are needed to enable them to meet their own personal obligations, especially during the holidays.

43.     With the prior disclosure and agreement of the Office of the US Trustee and the Secured Party, the Debtors have paid all prepetition priority payroll.

44.     Therefore, Debtors seek entry of an order *nunc pro tunc* authorizing Debtors to pay, in the ordinary course of its business, all prepetition priority payroll earned by its employees (for hourly employees covering the period 11/01/15 to the Petition Date and salary employees covering 11/08/15 to the Petition Date), and related prepetition priority employer payroll taxes.

45.     No employee which the applicable Debtor seeks to pay by this Motion is entitled to in excess of $12,475.00.

**E.     Motion to Pay Critical Vendors.**

46.     A summary of debtors unsecured non-priority claims as of the Petition Date are as follows:

| | |
|---|---:|
| TCR III | $ 6,653.48 |
| TCR IV | 6,579.92 |
| TCR V | 7,607.54 |
| TCR VI | .00 |
| Front Royal | 7,535.28 |
| Grand Total | $28,376.22 |

47.     Of the Grand Total, Debtors owe $12,341.61 to FPC Food Service for food used by Debtors to feed the residents.  FPC will not make further deliveries unless it is paid for prepetition deliveries.  Debtors can shop for food at grocery stores, but believes the food would cost more and there is the issue of transporting food sufficient to feed all of the residents three times a day.  Ultimately Debtors believe it would cost more to lose FPC as a vendor than it would to pay the prepetition cost.

48.     Of the Grand Total, Debtors owe $9,054.65 to Food Lion for food used by Debtors to feed the residents.  Debtors do not want to lose Food Lion as a vendor.

49.     Of the Grand Total, Debtors owe $5,635.49 for prepetition utility services (*i.e.,* $1,555.12 to Dominion Virginia Power, $3,145.46 to Town of Front Royal, and $934.91 to Town of Orange).  Debtors cannot allow utility services to be cut-off for its residents.  Debtors believe that it would cost more to pay adequate assurance deposits to the utility companies than to pay the prepetition utility bills.

50.     Of the Grand Total, the remaining amount (which is for maintenance) totals $1,344.47.  Debtors believe this remaining amount is *de minimus.*

**F.      Motion for Joint Administration.**

51.     Debtors, upon the recommendation and request of the US Trustee, have filed a motion for joint administration, and believe joint administration would reduce expected costs, facilitate administrative efficiencies, and avoid certain procedural problems.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on December 28, 2015.

 /s/ Charles V. Rice
Charles V. Rice