## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

In Re:

| | |
|---|---|
| **TCR III, INC. (f/k/a America House One, Inc.),**<br>EIN: 54-1910021 | **Case No. 15-14162-BFK** |
| **TCR IV, INC. (f/k/a America House Two, Inc.),**<br>EIN: 54-1892641 | **Case No. 15-14163-BFK** |
| **TCR V, INC. (f/k/a America House Three, Inc.),**<br>EIN: 54-1914323 | **Case No. 15-14165-BFK** |
| **TCR VI, INC., and**<br>EIN: 76-0801398 | **Case No. 15-14168-BFK** |
| **AMERICA HOUSE ASSISTED LIVING OF**<br>**FRONT ROYAL, L.L.C.,**<br>EIN: 54-2023050 | **Case No. 15-14169-BFK** |
| **Debtors.** | **Chapter 11** |

## DEBTOR'S MEMORANDUM OF POINTS AND AUTHORITIES
## ON CASH COLLATERAL

**COME NOW** TCR III, Inc. (f/k/a America House One, Inc.); TCR IV, Inc. (f/k/a America House Two, Inc.); TCR V, Inc. (f/k/a America House Three, Inc.); TCR VI, Inc.; and America House Assisted Living of Front Royal, L.L.C. (collectively the "**Debtors**"), by counsel, and file this memorandum of points and authorities on cash collateral, and in support thereof state as follows:

### Jurisdiction

1.  On November 24, 2015 (the "**Petition Date**"), the Debtors filed voluntary petitions seeking relief pursuant to Chapter 11 of the United States Bankruptcy Code. The Debtors continue to manage and operate their respective business as a debtor-in-possession in

Roy M. Terry, Jr., VSB No. 17764
William A. Gray, VSB No. 46911
John C. Smith, VSB No. 44556
SANDS ANDERSON PC
P.O. Box 1998
Richmond, Virginia 23218-1998
Telephone: 804.648.1636
*Proposed Counsel for the Debtors*

accordance with 11 U.S.C. §§ 1107 and 1108.  No creditor's committee, trustee, or examiner have been appointed herein.

2.      The Court has jurisdiction over this motion pursuant to 28 U.S.C. § 157(b)(2).

3.      Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**Summary**

4.      Debtor TCR III, Inc. ("**TCR III**"), is a Virginia corporation licensed by the Virginia Department of Social Services to operate an assisted living facility for up to 27 residents at 10140 Hastings Drive, Manassas, Virginia 20110 (the "**Manassas Facility**").  TCR III owns the Manassas Facility.

5.      Debtor TCR IV, Inc. ("**TCR IV**") is a Virginia corporation licensed by the Virginia Department of Social Services to operate an assisted living facility for up to 31 residents at 680 University Lane, Orange, Virginia 22960 (the "**Orange Facility**").  TCR IV owns the Orange Facility.

6.      Debtor TCR V, Inc. ("**TCR V**") is a Virginia corporation licensed by the Virginia Department of Social Services to operate an assisted living facility for up to 46 residents at 110 Spanish Oak Road, Stephens City, Virginia 22665 (the "**Stephens City Facility**").  TCR V owns the Stephens Facility.

7.      Debtor American House Assisted Living of Front Royal, L.L.C. ("**America House Front Royal**") is a Virginia limited liability company licensed by the Virginia Department of Social Services to operate an assisted living facility for up to 27 residents at 106 Westminster Drive, Front Royal, Virginia 22630 (the "**Front Royal Facility**") (together with the Manassas Facility, the Orange Facility and the Stephens City Facility, the "**Facilities**").  America House Front Royal owns the Front Royal Facility.

8.      Debtor TCR VI, Inc. ("**TCR VI**") is a Virginia corporation with a mailing address of 400A Kendrick Lane, Front Royal, Virginia 22630.  TCR VI is wholly owned by TCR III. TCR VI was formed to manage one or more Facilities, but never took over management of any of the Facilities.

9.      Debtors are affiliates because they are all directly or indirectly owned by TCR I, Inc., which in turn is solely owned by Charles V. Rice.[1]

10.      TC10 Grantors Trust and TS Cambridge Grantor Trust (collectively the "**Secured Parties**") assert that they are secured by interests in Cash Collateral.

### Issue

11.      The Debtors and Secured Parties dispute the extent of interests in cash collateral, including whether postpetition revenue received from patients is cash collateral:

- <u>Debtors</u> assert that postpetition revenue from patients is for health care pursuant to Monthly Care Contracts, thus is not cash collateral.

- <u>Secured Parties</u> assert that postpetition revenue from patients is rent covered by a prepetition assignment of rent, thus is cash collateral.

### MEMORANDUM OF LAW

12.      The Bankruptcy Code sections applicable to cash collateral are summarized as follows:

A debtor in possession is prohibited from using cash collateral absent authorization by the court or consent from the entity that has an interest in the collateral.  11 U.S.C. § 363(c)(2). Cash collateral consists of "cash, negotiable instruments . . . deposit accounts, or other cash equivalents whenever acquired in

---

[1] Ownership is as follows:
- TCR III, Inc., TCR IV, Inc., and TCR V, Inc. are solely owned by TCR I, Inc.;
- TCR VI, Inc., is solely owned by TCR III, Inc., which in turn is solely owned by TCR I, Inc.; and
- America House Assisted Living of Front Royal, L.L.C. is solely owned by America House Assisted Living, LLC, which in turn is solely owned by TCR I, Inc.

which the estate and an entity other than the estate have an interest."[2]  11 U.S.C. § 363(a).

As a general rule, postpetition revenue is not cash collateral.  Under § 552(a), a creditors prepetition security interest does not extend to property acquired by the debtor postpetition even if there is an after acquired clause in the security agreement.[3] 11 U.S.C. § 552(a).  The purpose of § 552(a) is "to allow a debtor to gather into the estate as much money as possible to satisfy the claims of all creditors."  *Philip Morris Capital Corp. v. Bering Trader, Inc. (In re Bering Trader, Inc.)*, 944 F.2d 500, 502 (9th Cir. 1991); *Arkison v. Frontier Asset Mgmt., LLC (In re Skagit Pac. Corp.)*, 316 B.R. 330, 335 (9th Cir. BAP 2004).

Section 552(b) provides an exception to this rule.  Section 552(b)(1) allows a prepetition security interest to extend to the postpetition "proceeds, products, offspring, or profits" of collateral to be covered by a security interest if the security agreement expressly provides for an interest in such property and the interest has been perfected under applicable nonbankruptcy law.[4] Additionally, § 552(b)(2) provides similar treatment for "amounts paid as rents of such property or the fees, charges, accounts, or other payments for the use or occupancy of rooms and other public

---

[2] Section 363(a) provides that:

> cash collateral means cash, negotiable instruments . . . deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, . . . or other payments for the use or occupancy . . . lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

[3] Section 552:

> (a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

[4] Section 552(b)(1):

> Except as provided in sections 363, 506(c), 522, 544, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, or profits of such property, then such security interest extends to such proceeds, products, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

facilities in hotels, motels, or other lodging properties."[5]   Read
together, the provisions of § 363(c)(2) and § 552(b) protect a
creditor's collateral from being used by a debtor postpetition if the
creditor's security interest extends to one of the categories set out
in § 552(b).   Put another way, a creditor is not entitled to the
protections of § 363(c)(2) unless its security interest satisfies
§ 552(b).   Section 552(b) "balances the Code's interest in freeing
the debtor of prepetition obligations with a secured creditor's rights
to maintain a bargained-for interest in certain items of collateral."
*In re Bering Trader, Inc*., 944 F.2d at 502.   It provides "a <u>narrow</u>
exception to the general rule of 552(a)."   *Id.* (emphasis in original).

*Far East Nat'l Bank v. United States Tr. (In re Premier Golf Props., LP)*, 477 B.R. 767, 771-72

(9th Cir. BAP 2012).

I.   **The Secured Parties must meet their burden of proof that they hold an enforceable,
non-avoidable security interests in the subject collateral.**

13.   The first question the court must determine is whether the Secured Parties have an

enforceable security interest in the subject collateral (*i.e.,* revenues from long-term health-care

patients).   *See HT Pueblo Prop., LLC*, 462 B.R. 812, 818 (Bankr. Colo. 2011) (The concept of

"cash collateral" includes the notion a creditor has an enforceable, non-avoidable security interest

in the subject collateral.).   The Secured Parties have the burden of establishing the existence and

the extent of their interests in the property they claim as collateral.   *See* 11 U.S.C. § 363(p)(2)

("[T]he entity asserting an interest in [cash collateral] has the burden of proof on the issue of the

validity, priority, or extent of such interest.").

---

[5] Section 552(b)(2):

> Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548
> of this title, and notwithstanding section 546(b) of this title, if the debtor and an
> entity entered into a security agreement before the commencement of the case
> and if the security interest created by such security agreement extends to
> property of the debtor acquired before the commencement of the case and to
> amounts paid as rents of such property or the fees, charges, accounts, or other
> payments for the use or occupancy of rooms and other public facilities in hotels,
> motels, or other lodging properties, then such security interest extends to such
> rents and such fees, charges, accounts, or other payments acquired by the estate
> after the commencement of the case to the extent provided in such security
> agreement, except to any extent that the court, after notice and a hearing and
> based on the equities of the case, orders otherwise.

## II.    Postpetition revenues from long-term health-care patients are not considered "rent" as that term is used in §§ 363(a) and 552(b)(2).

14.    Bankruptcy Code § 552(b)(2) includes postpetition "amounts paid as rents . . . for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties, . . . ."

### A.    Debtors' revenues from long-term health-care patients are not "rent" as that term is used in §§ 363(a) and 552(b)(2).

15.    To determine what constitutes "rent" in non-hotel cases, courts analyze whether income was produced by the real property or by services on the property. *Far East Nat'l Bank v. United States Tr. (In re Premier Golf Props., LP)*, 477 B.R. 767, 773 (9th Cir. BAP 2012). **"If the income is produced by the real property, it is considered rents; but if the income is the result of services rendered or the result of the specific business conducted on the property, then it does not constitute rents."** *Id.* at 772-73 (emphasis added) (*citing Zeeway Corp. v. Rio Salado Bank (In re Zeeway Corp.)*, 71 B.R. 210, 211-12 (9th Cir. BAP 1987)).

#### 1.    Debtors' revenues are not "rent" because they are the result of services rendered pursuant to Monthly Care Contracts.

16.    All Facilities have patients sign a Monthly Care Contract which memorialize agreements to provide care to the patients, *see* Ex. A, and expressly do not convey an interest in realty or personal property to the patients, *see* Ex. A § IV(A) at 5.    Accordingly, the Monthly Care Contracts are for the provision of health care services, rather than rental of property.    *See In re Hillside Assoc. Ltd. Partnership*, 121 B.R. 23, 24 n.3 (9th Cir. BAP 1990).    That the patients live there is incidental to the fact that the [long-term care facility] is providing them with care.[6] *Id.* at 24.    "Money paid for the care of . . . patients can no more be described as 'rents' than could

---

[6] While *Hillside* involved a nursing home rather than an assisted living facility, *Hillside* (as a nursing facility) and the Debtors (as assisted living facilities) are "long-term care facilities" and are included in the definition of a "health care business".    *See* 11 U.S.C. § 101(27A)(B)(ii).

6

hospital bills." *Id.* Accordingly, revenues are not "rent" because they are the result of services rendered by long-term health-care facilities. *Id.* at 25; *Premier Golf Props., LP*, 477 B.R. at 772-73.

> **2. Debtors' revenues are not "rent" because they are the result of the specific business conducted on the property.**

17.      Debtors meet the Bankruptcy Code's definition of a health-care business. *See* 11 U.S.C. § 101(27A)(B)(ii)(III). Revenues are not "rent" because they are the result of Debtors operating long-term health-care businesses on the property. *See In re Hillside Assoc. Ltd. Partnership*, 121 B.R. at 25; *Premier Golf Props., LP*, 477 B.R. at 772-73.

**B. Debtors' revenues from long-term health-care patients are not "rent" because they do not meet the ordinary definition of "rent".**

18.      In ordinary usage, "rent" is compensation paid for the use of property:

> **Rent.** Consideration paid for use or occupation of property. In a broader sense, it is the compensation or fee paid, usually periodically, for the use of any rental property, land buildings, equipment, etc.
>
> At common law, them referred to compensation or return of value given at stated times for the possession of lands and tenements corporeal. A sum of money or other consideration, issuing yearly out of lands and tenements corporeal; something which a tenant renders out of the profits of the land which he enjoys; a compensation or return, being in the nature of an acknowledgement or recompense given for the possession of some corporeal inheritance.

BLACK'S LAW DICTIONARY 1297 (6th ed. 1995); *accord* 11 U.S.C. § 552(b)(2) ("rents . . . for the use or occupancy of rooms").

19.      For reasons discussed more fully in the proceeding section, amounts paid by patients to health-care businesses are more properly classified as being for health-care services rendered by operations of a long-term care facility rather than rent. *See supra.*

### III.    The Secured Parties' interests in Cash Collateral are adequately protected by replacement liens.

20.    This Court has authority to approve use of cash collateral if the secured creditor's interest in cash collateral is adequately protected.  *See* 11 U.S.C. § 363(e).

21.    The Court must value the Secured Parties interest in cash collateral and consider the Debtors' proposed adequate protection before the court may authorize any use of cash collateral.  *See SI Grand Traverse LLC*, 450 B.R. 703, 705 (Bankr. W.D. Mich. 2011).  To determine whether an entity is entitled to adequate protection and the type and the amount required, a court must evaluate the value of the collateral, the creditor's interest in the collateral, and the extent to which that value will decrease during the course of the bankruptcy case.  *In re Wrecclesham Grange, Inc.*, 221 B.R. 978, 981 (Bankr. M.D. Fla. 1997).

22.    The Secured Parties are adequately protected by replacement liens.  This is true even if Debtors' revenues are considered "rent".

> With regards to rents, a court must look to the stream of future rents to determine whether adequate protection is required.  This is because the lien on each month's rent replaces the lien on the prior month's rents, so there is a replacement lien of equal value under Section 361 of the Bankruptcy Code.  Therefore, as long as the debtor generates a continuous income stream, the debtor's use of the rental income does not diminish the value of the collateral.  The rationale is that the protected cash proceeds are being used to generate new collateral which will be of at least equivalent value of those replaced.  Accordingly, if the underlying collateral is not declining in value, the additional cash collateral may be used by the debtor to pay administrative expenses as well as to maintain and improve the underlying collateral.
>
> . . .
>
> The primary issue is whether the value of the stream of postpetition rents is decreasing.  The burden of proof is on the Creditors to prove that the value of its collateral is declining.

*In re Wrecclesham Grange, Inc.*, 221 B.R. at 981-82 (citations omitted).

23.     In this case, the Secured Parties are not harmed if the Debtors use the cash collateral to continue operations because operations will generate cash and accounts receivable in which the Secured Parties have replacement liens.

**IV.    Even if the Secured Parties have interests in Cash Collateral that are decreasing, the Court should allow the Debtors to use Cash Collateral under the equities of the case.**

24.     This Court has authority to approve use of cash collateral even if the secured creditor does not consent.  *See* 11 U.S.C. § 363(c)(2)(B).

**A.  This may be much ado about very little Cash Collateral.**

25.     Depending on the Court's ruling on the scope of cash collateral, this could be much ado about very little money.  A complicated cash collateral order is not needed because on the Petition Date the Debtors had very little cash collateral, if any, in the form of cash and accounts receivable.

**B.  As a matter of public policy, the Court should allow use of Cash Collateral to protect the elderly patients.**

26.     As a matter of public policy, the Court should protect the interests of elderly patients and unsecured creditors by allowing Debtors to use cash collateral based on the equities of the case.  Entry of a cash collateral Order is in the Best Interests of the Debtors, their Creditors, and the Estates.  Debtors are unable to obtain postpetition credit from outside parties.  Because substantially all of Debtors' assets are already encumbered with liens granted to the Secured Parties to secure debts incurred prior to the Petition Date, the Debtors are unable to obtain from third-parties, in the ordinary course of business or otherwise, unsecured credit allowable pursuant to Bankruptcy Code § 503(b)(1) as an administrative expense in an amount necessary for the maintenance and preservation of its assets and operation of its business on more advantageous economic and non-economic terms than those offered under the Proposed Order.

**WHEREFORE**, Debtors respectfully requests that the Court enter an Order consistent with the above, and for such other and further relief as the Court deems just and proper.

Date: December 31, 2015                    TCR III, INC., TCR IV, INC.,
                                           TCR V, INC., TCR VI, INC., and
                                           AMERICA HOUSE ASSISTED LIVING OF
                                             FRONT ROYAL, L.L.C.,
                                           by Proposed Counsel

/s/ John C. Smith
Roy M. Terry, Jr., VSB No. 17764
William A. Gray, VSB No. 46911
John C. Smith, VSB No. 44556
SANDS ANDERSON PC
P.O. Box 1998
Richmond, Virginia 23218-1998
Telephone: 804.648.1636
*Proposed Counsel for the Debtors*

W3241992

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of December, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties who receive ECF notification, including:

Donald F. King on behalf of Creditors TC10 Grantor Trust and TS Cambridge Grantor Trust; donking@ofplaw.com

Alexander McDonald Laughlin on behalf of Creditor TC10 Grantor Trust and TS Cambridge Grantor Trust; alex.laughlin@ofplaw.com

Bradley David Jones on behalf of U.S. Trustee Judy A. Robbins; bradley.d.jones@usdoj.gov

Judy A. Robbins; ustpregion04.ax.ecf@usdoj.gov

Thomas W. Waldrep, Jr. on behalf of Interested Party Meridian Senior Living, LLC; bankruptcy@wcsr.com

/s/ John C. Smith

# MONTHLY CARE CONTRACT
## OF
## AMERISIST

400 A Kendrick Lane
Front Royal, VA  22630

## INTRODUCTION

This Agreement is made and entered into _____, _____, by and between Amerisist (hereinafter referred to as the "Corporation") and _____ , (hereinafter referred to as the "Resident") for residence in the Amerisist of _____.

The Corporation is organized under the laws of the Commonwealth of Virginia to establish and operate an assisted living facility for aged men, women and couples in Virginia. The Corporation's facilities are licensed in part as Homes for Adults by the Virginia Department of Social Services, to which inquiries may be made at:

_____

_____

The Resident, whose date of birth is _____, has made application for residence and such application has been approved by the Corporation subject to the provisions of this Contract.

## THE PARTIES AGREE:

## I.    LODGING, MEALS, AND OTHER SERVICES.

The Corporation agrees to furnish the Resident lodging, meals, care, and other services enumerated in this and the following sections so long as the Resident carries out his obligations under this Contract.

    **A.**    **Lodging.** The Resident shall have a personal, non-assignable, right to reside in room or suite #_____ at Amerisist subject to removal only as hereafter provided in this Contract and subject to Section VI.

Z:\ResidentInformation\MONTHLYCONTRACT revised 2012

_____/_____
Res. Manager     Resident

**EXHIBIT A**

**B.    Meals.** The Corporation will provide the Resident with a minimum of three meals a day, nutritionally well-balanced and provided in the dining room or areas designated by the Corporation. Special diets will be provided only upon approval of the Corporation. An extra charge may be made for special diets.

**C.    Congregate Facilities.** The Resident shall have the right to use, in common with other residents, the indoor and outdoor social and recreational facilities and other congregate and communal facilities, provided from time to time by the Corporation.

**D.    Utilities.** The Corporation shall provide the utilities reasonably required in connection with the occupancy of the room or suite (water, heating, electricity, air-conditioning, sewage and trash removal) subject, however, to the availability of such services to the Corporation.

**E.    Mail.** Individual mail delivery, where appropriate, will be provided by the Corporation.

**F.    Furnishings.** The Corporation will provide wall-to-wall carpeting, curtains, bed(s), night table(s), dresser(s), mirror(s), lamps, sitting chairs, refrigerator, table, straight-back chairs and an end table for each suite. All furniture and appliances provided by the Resident shall be subject to the approval of the Corporation. The Resident shall be responsible for damage done to the Corporation's furnishings excepting normal wear and tear.

**G.    Linens.** The Corporation will provide the Resident with bed linen and towels as necessary and convenient for the Resident.

**H.    Laundry.** The Corporation will provide reasonable laundry service for bed and bath linen. Personal laundry service can be provided at an additional charge per month.

**I.    Guests.** Guests may visit in the Resident's room, suite, or other public areas, at their convenience. The Corporation reserves the right to make rules regarding visits and guest behavior and may limit or terminate a visit at any time for reasons it deems appropriate.

**J.    Safety.**
  **1.**    Each suite is equipped with emergency response systems in bedroom(s), living room and bathroom for 24 hour health care response.
  **2.**    Smoke detection systems are maintained throughout the building. Fire sprinkler system for fire suppression is tied into the smoke detection system.

Z:\ResidentInformation\MONTHLYCONTRACT revised 2012

_____/_____
Res. Manager      Resident

**K.** **Grounds.**  The Corporation will maintain basic landscaping, groundskeeping and lawn service.

**L.** **Transportation.**  Transportation may be provided in accordance with Corporation's basic policy.

**M.** **Television.**  Television hookups will be provided in each suite.  The Resident is free to furnish his own television set or one will be provided in the Assisted Living Unit by the Corporation.

## II.   HEALTH CARE.

**A.** **Outpatient Services.**  The Corporation shall provide examination facilities at Amerisist where the Resident may be examined and treated as an outpatient.  The Resident is free to engage the services of a physician of his own choice who may use the facilities provided by the Corporation, subject to the rules and regulations of the Corporation.  Arrangements for other health care professionals to visit or treat the Resident may be made through the Administrator.

**B.** **Medicare and Health Insurance Assignment**.  The Resident shall, if not already enrolled, apply for and secure enrollment in the Hospital Benefits Program under Medicare Part A of Public Law 89-67.  If the Resident is not eligible for this program, he shall obtain equivalent insurance coverage acceptable to the Corporation.

**C.** **Supplemental Insurance.**  The Resident shall obtain a supplemental insurance policy acceptable to the Corporation to pay Medicare co-insurance and deductible amounts.

**D.** **Health Related Charges.**  The Resident shall pay the following charges to the extent they are not covered by Medicare or the Resident's supplemental insurance:

**1.** Charges of any physician, physical therapist, occupational therapist, podiatrist or other health professional, wherever provided at Amerisist or elsewhere.

**2.** Hospital charges, and

**3.** Charges for medicines, drugs, vitamins, food supplements, dental work, glasses, hearing aids, orthopedic devices and other health related items.

Z:\ResidentInformation\MONTHLYCONTRACT revised 2012

_____/_____
Res. Manager      Resident

## III.    PAYMENT OF FEES.

**A.**    The Corporation has disclosed and explained to the Resident the fee schedules for the services to be rendered by the Corporation under this Contract.  The Resident has elected and hereby agrees to pay to the Corporation an Entrance Fee and a Monthly Fee in accordance with the Corporation's current Fee Schedule and as calculated on the Monthly Admission Form, which is considered part of this contract.

**B.**    **Costs for Other Services and Monthly Fees.**  The Resident shall be billed monthly for any services and supplies provided by the Corporation, but not included in the Monthly Fee.  Monthly Fees and invoices for other charges shall be paid within ten (10) days of the due date, which is the first of each month, or will be subject to a late charge of 1.5% per month for each day in arrears.  Checks are to be sent to the corporate office at the address specified on the invoice.

**C.**    **Adjustment to Monthly Fee.**

**1.**    The Corporation shall endeavor to maintain the Monthly Fee at the lowest possible rate consistent with sound financial practice and maintenance of the quality of services called for by this Contract.  However, the Resident understands and agrees that the Monthly Fee may be increased by the Corporation from time to time, in its sole discretion, and that payment of the Monthly Fee, as adjusted, shall be the obligation of the Resident under this Contract.  A written notice will be given to the Resident at least thirty (30) days prior to the effective date of any increase in the Monthly Fee or of any change in the scope of services provided by the Corporation.

**2.**    The Monthly Fee at move-in shall be prorated for any applicable period less than a month.  If the resident enters the facility after the 10th of the month, they will pay the following month's charge in addition to the current month's pro-rated charge.

**3.**    The initial monthly fee will be determined prior to the admission of the Resident.  This initial fee will be based upon the condition of the Resident and the proposed level of care that will be provided to the Resident upon entrance. If, after the Resident has entered the facility, the condition or level of care requires changes as determined by an interdisciplinary team of professionals and in consultation with the Resident and/or family, the monthly rate will be adjusted accordingly, consistent with the rate schedule in effect at that time.  The effective date of this change will be the date of admission.

4

Z:\ResidentInformation\MONTHLYCONTRACT revised 2012

_____/_____
Res. Manager        Resident

**4.**      Based upon admission criteria, all residents will be charged an identical fee for identical services.  However, if the resident's physical or mental condition deteriorates and a change in the level of services required occurs, **the resident may be charged for additional services or the Corporation may determine the resident no longer meets the qualification for residency at Amerisist. Discharge decisions will be discussed with the resident and family, as appropriate.**

## IV.    PROPERTY RIGHTS.

**A.**      **The Resident's Rights.**  The rights of the Resident under this Contract are purely personal and may not be assigned, transferred, inherited or devised.  Although the Resident is granted the right to occupy the assigned accommodations, this Contract is not a lease and the Resident is granted no right of ownership of any property of the Corporation.

**B.**      **Right of Entry.**  Employees of the Corporation shall have the right to enter the Resident's accommodations at any time to respond to fire or medical alerts and for other emergency purposes and with prior announcement at reasonable times for inspection and to perform housekeeping and maintenance functions.

**C.**      **Removal of Property.**  Upon termination of this Contract or the permanent transfer from the Resident's accommodations, all of the Resident's property is to be removed from the room or suite prior to the date the monthly fees are paid through.  After such date the Corporation shall have the right to remove any remaining property and store it for an additional thirty (30) days.  All property not claimed at the end of such thirty (30) days shall become the property of the Corporation to dispose of as it chooses without liability to the Resident or estate.

**D.**      **Damages or Loss of Property.**  The Corporation shall not be responsible for damage to or loss of any of the Resident's property by casualty, theft or other cause.

**E.**      **Responsibility for Damages and Incurred Costs.**  The Resident shall reimburse the Corporation for any costs incurred or damages suffered by the Corporation resulting from the carelessness, negligence or wrongful acts of the Resident or those of guests.  The Resident shall be responsible to pay for any costs incurred by their guests including, but not limited to, meals, lodging, etc.

Z:\ResidentInformation\MONTHLYCONTRACT revised 2012

_____/_____
Res. Manager        Resident

    **F.**    **Waiver of Liability.**  The Resident hereby releases the Corporation from liability for death, injury to his person or property caused by any fire, theft, assault or other cause beyond the control of the Corporation and from any liability resulting from the negligence or wrongful acts of other residents, and hereby waives any claim that his estate may have against the Corporation there from.

    **G.**    **Subordination to Financing.**  The Resident's rights under this Contract shall at all times be subordinate to the rights of any bona fide lender under any mortgage, deed of trust or other security interest, now existing or hereafter created, on any of the property of the Corporation and to all amendments, modifications, replacements or refinancing thereof.  The Resident shall execute and deliver any document required by the Corporation or by the holder of any mortgage, deed of trust or security agreement to evident or effect such subordination.

## V.    TERM OF CONTRACT.

This Contract shall be valid for one (1) year from the date of admission.  The Contract shall automatically renew unless the Resident notifies the Corporation in writing thirty (30) days prior to the termination date.

## VI.    TRANSFER AND RELEASE OF SUITE.

    **A.**    If the Corporation determines that the Resident's needs cannot be accommodated in the Assisted Living Unit, the Corporation may transfer the Resident to a facility that is able to perform tasks that meet such needs.  Such determination for transfer of the Resident shall be made by the Administration after consultation with the Resident, and/or family, and an interdisciplinary team of professionals invited to participate in the decision-making process. Following a decision to affect a permanent transfer, the Resident's accommodations shall be released.

    **B.**    If the Corporation determines that the Resident's needs cannot reasonably be cared for in the Assisted Living facility due to a medical and/or psychological condition as determined in Section VI.A above, the Contract is terminated and the Resident has fourteen (14) days to make other living arrangements.

    **C.**    **Right of Medical Access.**  The Corporation shall have the right to appoint a physician of its choice licensed in Virginia, to determine or confirm the conditions noted in Section A and/or B above.

Z:\ResidentInformation\MONTHLYCONTRACT revised 2012

_____/_____
Res. Manager    Resident

## VII.   TERMINATION OF CONTRACT.

### A.   Termination by the Resident.

**1.   Termination Prior to Admission.**  The Resident may terminate this Contract for any reason prior to admission by giving written notice to the Corporation at least seven (7) days before the desired admission date.  Upon any such termination, the Resident shall receive a refund of the Entrance Fee.  No refund of the Entrance Fee shall be made if renovations have been made to a suite at the request of the Resident prior to admission; otherwise, all paid fees will be refunded within thirty days of written notice, except the application fee.

**2.   Termination After Admission.**

a.   The Resident may terminate this Contract for any reason at any time by giving written notice to the Corporation at least thirty (30) days before the desired termination date.

b.   Additional Payments.  After the resident gives the required notice of termination, he shall continue to pay the Monthly Fee until his scheduled termination date.   The Resident shall pay to the Corporation all amounts owed to it, and any expenses incurred by the Corporation in connection with the termination, including any necessary repairs or replacement of property.

c.   In the event resident terminates his residency at the facility, and payments are current on the first day of the termination month, the following refund policy will apply:

1.   If residency terminates prior to the completion of the fourteenth (14th) day of the month, a refund of fifty percent (50%) of the monthly charge will be refunded.  If residency terminates on or after the fifteenth (15th) of the month, no refund will be given.

2.   If the Resident terminates agreement within the first 30 days, the Community Entrance Fee is not refundable.

3.   In the event the Resident is temporarily discharged (less than thirty (30) days) from the facility, for any reason, monthly charges will continue to apply, and no refund will be granted for the actual days absent from the Resident's assigned suite.

7

Z:\ResidentInformation\MONTHLYCONTRACT revised 2012

_____/_____
Res. Manager      Resident

        If the Resident is out of the facility for more than 30 days, the monthly charges continue until the resident gives notice and vacates the dwelling as described in 2. a. above.

4.        Any refund due to the Resident will be paid within thirty (30) days after discharge.

5.        The Application Fee in not refundable.

**B.      Termination by Corporation (including emergency termination).**

1.        The Corporation may terminate this Contract with full refund of payments in the event of a material deterioration in the Resident's physical or mental condition between the time of this application and the actual effective date of this Contract. If the Universal Assessment Instrument and/or history and physical have been completed, the charge for these services will not be refunded.

2.        The Corporation may terminate this Contract at any time for any cause which, in its sole discretion, shall be good and sufficient. Good and sufficient cause shall include, but shall not be limited, to:

    a.      The Resident's failure to perform his obligations under this Contract, including his obligation to pay the Monthly Fee and other charges.

    b.      The Resident's failure to abide by the written rules and regulations of the Corporation as in effect from time to time.

    c.      Conduct by the Resident which constitutes a danger to others or to himself or is detrimental to the peace or health of other residents of Amerisist.

    If termination of the Contract is contemplated due to Resident's activities listed in a., b. and/or c. above, the Corporation will give the Resident written notice of, and a reasonable opportunity to cure, within a reasonable period, whatever conduct is alleged to warrant the cancellation of the Contract. A decision by the Corporation to terminate the Contract for good and sufficient cause shall be final and binding on all parties. Refunds shall be made in accordance with Section VII.A.2.c.1.

3.        In the event Resident defaults in the payment of any fees due under this Agreement and after thirty (30) days' notice fails or refuses to pay the same and this account is turned over to an attorney for collection, Resident agrees to pay reasonable attorneys' fees for collection.

8

                                    _____/_____
                                    Res. Manager    Resident

**C.**  **Termination by Death.**  This Contract shall automatically terminate upon the death of the Resident, with the provision (Section IV, paragraph C) which relates to the vacating of the room or suite shall continue to remain in effect.  The Resident's estate shall remain liable for any owed amounts for Monthly Fees or Additional Cost Items and Services.  Refunds shall be made in accordance with Section VII.A.2.c.1., 2., 4., and 5.

**D.**  **Transfer of ownership/Closure of the Facility.**  In the even residency terminates due to transfer of ownership or closure of the facility, the resident will receive a refund.  Refunds shall be made in accordance with Section VII.A.2.c.1., 2., 4., and 5.  Prior to transfer of ownership or closure of the facility, the resident will receive a minimum of thirty (30) days written notice from the Corporation.

## VIII.  MISCELLANEOUS

**A.**  **Confidentiality of Personal Information.**  The Corporation shall hold in strict confidence all personal and financial information and records supplied by the Resident.  The Resident may approve or refuse the release of any information or records to any individual outside the facility, except as otherwise provided by law and in the case of transfer to another health care facility.

**B.**  **Representations.**  The Resident's application, financial statement and health history statement files with the Corporation are hereby incorporated in this Contract by reference.  The Resident hereby and/or his representative hereby represents that all statements contained herein are true and there have been no material omissions or adverse changes in such statements that have been conveyed to the Corporation in writing.

**C.**  **Rules and Regulations.**  The Resident shall abide by the Corporation's rules and regulations as in effect from time to time.

**D.**  **Resident Council.**  The Resident Council is composed of residents of the facility and may be extended to family members, advocates, and friends.  Interested Residents are encouraged to and may establish and maintain a Resident Council.  The facility shall assist residents with the formation, maintenance of the council, scheduling meetings, providing space, posting notices, attending meetings as requested, and preparing written reports.  The purpose of the Resident Council is to work with the facility on improving the quality of life for all residents, discuss services offered by the facility and make recommendations for resolution of identified problems and other functions as determined by the council.

_____/_____
Res. Manager        Resident

**E.**     **Weapons.**  All forms of weapons are prohibited in the community.  This includes weapons such as, but not limited to, firearms, knives, bombs, grenades, fireworks and other explosives.

**F.**     **Pets.**  The community will allow pets only after thorough consideration and review. The Resident is responsible for, but not limited to, the care, health maintenance and behavior of their pet.

**G.**     **Smoking.**  Smoking is allowed in areas outside of the building.  Residents may smoke only in approved outdoor areas.   Residents are required to maintain responsible smoking habits at all times and will be monitored at the discretion of the Resident Manager.

**H.**     **Preservation of Assets.**   When the Resident receives financial management assistance from the Corporation, or when the Corporation, in its sole discretion, feels that the continued management by the Resident of his property may place the Resident in need of financial assistance from the Corporation, the Resident agrees that the Corporation shall have the right to require the Resident to make arrangements for the preservation and management of his property by a third party (or parties) including, but not limited to, the execution and funding of a trust agreement for the Resident's benefit.

**I.**     **Waiver of One Breach Not a Waiver of Any Other.**  The failure of the Corporation in any one or more instances to insist upon the strict performance and observance of compliance by the Resident with any of the terms or provisions of this Contract shall not be construed to be a waiver or relinquishment by the Corporation of its right to insist upon strict compliance by the Resident with all the terms and provisions of this Contract.    The Corporation's representatives have made no promises or representations with respect to the Resident's accommodations, facilities, refunds, or any of the Corporation's promises and undertakings with respect to the care of the Resident except as specifically set forth herein.

**J.**     **Power of Attorney.**  The Resident will advise the Corporation of arrangements made to handle his financial affairs if incapacitated.   Should an attorney-in-fact or committee be named or appointed for the Resident, whether institutional or individual, this information will be given to the Corporation.

**K.**     **Gender.**  All references herein to masculine pronouns shall be deemed to include the feminine.

Z:\ResidentInformation\MONTHLYCONTRACT revised 2012

_____/_____
Res. Manager        Resident

**L.**     **Binding Effect.** The covenants and conditions contained in this Contract shall bind and inure to the benefit of the Corporation and the Resident and their respective heirs, distributees, executors, administrators, attorneys-in-fact, committees and successors.

**M.**     **The Resident's Rights.** The Resident acknowledges that he has been informed and had explained to him the following:

    **1.**     Paragraph 63.1-1808 of the Code of Virginia (The Residents' Rights Amendment).

    **2.**     The policies and procedures of the Corporation for implementing the Residents' Rights Amendments including:

       a.     Grievance procedure.

       b.     Notice required for termination (Sections V and VII).

          1.     The Resident possessions (Section IV, paragraph D) /furnishings (Section IV, paragraph C).

**N.**     **Miscellaneous.** This Contract constitutes the entire Contract between the parties and no waiver or modification of any of the terms and conditions hereof shall be valid unless written upon or reduced to writing and attached to this Contract and signed by all parties hereto. The parties further agree that the laws of the Commonwealth of Virginia shall govern all of their rights and duties under this Contract, the interpretation of its language and any questions concerning performance and discharge.

11

_____/_____
Res. Manager      Resident

**IN WITNESS WHEREOF,** the Corporation and the Resident have executed this Contract to be effective as written above.  Resident attests he has read and understood and has been given the opportunity to discuss any features of this Contract that may have been unclear.

**AMERISIST**
**400 A Kendrick Lane**
Front Royal, Virginia 22630

The Effective Date of this Contract shall be:
Date: _____
or the date the Resident moves into the
suite, whichever occurs first.

By: _____
Resident Manager and/or Company
Representative

Date: _____

_____(Seal)
Resident

_____

_____(Seal)

Suite Number

Legal Representative

_____

Amerisist

Initial Daily Rate                    $_____/day*

*Rate subject to change as specified in Section III.C.3.

12