UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re: TCR III, INC., *et al.*,           Case No. 15-14162-BFK
                                                           Chapter 11
                     Debtors.          (Jointly Administered)

## DEBTORS' RESPONSE TO
## SECURED PARTIES' OBJECTION TO
## USE OF CASH COLLATERAL

**COME NOW** TCR III, Inc. (f/k/a America House One, Inc.); TCR IV, Inc. (f/k/a America House Two, Inc.); TCR V, Inc. (f/k/a America House Three, Inc.); TCR VI, Inc.; and America House Assisted Living of Front Royal, L.L.C. (collectively the "**Debtors**"), by counsel, and in response to the *Opposition to Chapter 11 Debtor's Use of Cash Collateral* (the "**Objection**") filed by TS Cambridge Grantor Trust and TC10 Grantor Trust (collectively the "**Secured Parties**"), state as follows:

**Procedural History**

1. On December 31, 2015, Debtors filed *Debtor's Motion for Order Approving Interim Use of Cash Collateral and Setting Final Hearing* (the "**Motion**") and *Debtor's Memorandum of Points and Authorities on Cash Collateral* ("**Debtor's Memorandum**").

2. On January 4, 2016, TS Cambridge and TC10 Grantor Trust (individually and collectively the "**Secured Parties**") filed an *Opposition to Chapter 11 Debtor's Use of Cash Collateral* (the "**Objection**").

3. An interim hearing was held January 5, 2016, on the Motion and the Objection thereto. At the conclusion of the hearing, the Court, among other things, granted leave for the

Roy M. Terry, Jr., VSB No. 17764
William A. Gray, VSB No. 46911
John C. Smith, VSB No. 44556
SANDS ANDERSON PC
P.O. Box 1998
Richmond, Virginia 23218-1998
Telephone: 804.648.1636
*Proposed Counsel for the Debtors*

Debtors to file a response to the Objection along with a supplemental memorandum of law in advance of a final hearing on the Motion.

## RESPONSE

A. **The Secured Parties improperly conflate adequate protection for continued use of cash collateral, with adequate protection due on other forms of collateral.**

4. The Motion before the Court is limited to use of "cash collateral". "Cash collateral" is a statutorily defined term. *See* 11 U.S.C. § 363(a). Any adequate protection awarded by the Court should likewise be limited to relief needed to protect the Secured Parties' interest in cash collateral. While the Secured Parties might be entitled to adequate protection on collateral such as the facilities, adequate protection for collateral not within the statutory definition of "cash collateral" is not before the Court.[1]

B. **The Secured Parties need to put on evidence (1) that their security interest covers cash collateral, and (2) that any interests in cash collateral are properly perfected.**

1. **The Secured Parties need to put on evidence that their security interest covers cash collateral.**

5. The Secured Parties assert that their security interest in cash collateral and other collateral are a result of deeds of trust, assignments of rents, and U.C.C. security agreements that give them a security interest in substantially all of the Debtors' personal property and fixtures. The Secured Parties need to be more specific about which documents grant them a security interest in cash collateral, and produce those documents for the Court. *See* 11 U.S.C. § 363(p)(2) ("[T]he entity asserting an interest in [cash collateral] has the burden of proof on the issue of the validity, priority, or extent of such interest."); *see also* Debtor's Memorandum § I at 5.

---

[1] Debtors are continuing to make the prepetition loan payments as adequate protection on the facilities. If the Secured Parties are not satisfied with the adequate protection payments being made on the facilities or any other collateral not within the definition of cash collateral, they need to file a motion to properly bring that before the Court.

2

**2. The Secured Parties need to put on evidence that any interests in cash collateral are properly perfected.**

6. The Secured Parties need to prove that their interests in cash collateral are enforceable by being properly perfected. *See id.*

**C.    The Debtors and Secured Parties dispute the items included in cash collateral.**

7. The Secured Parties assert "[a]ll of the Debtor's rents, revenues, accounts, contract rights and accounts receivable constitute cash collateral subject to the [Secured Parties'] lien." Debtors will address these *in seriatim*.

**1. Rents, Profits and Income.**

8. The Debtors do not have any income from "rents". Charles Rice testified at the 341 hearing that all of Debtor's income is from services rendered pursuant to Monthly Care Contracts. (A true and accurate copy of the Monthly Care Contract form currently used by the Debtors is attached as Exhibit A to the Debtor's Memorandum.) For reasons more fully explained in Debtor's Memorandum, revenues from long-term health-care patients are not considered "rent" as that term is used in §§ 363(a) and 552(b)(2). *See* Debtor's Memorandum § II at 6-7.

9. Similarly, the Debtors do not have any income from "profits". *See HUD v. Hillside Assoc. Ltd. P'ship (In re Hillside Assoc. Ltd. P'ship)*, 121 B.R. 23, 24 (9th Cir. BAP 1990) (holding funds paid for care of overnight nursing home patients is not within scope of "rents, profits, income and charges of whatsoever sort" clause).

> The Deed of Trust refers to an interest in the subject real property, "and the rents, issues, and profits of the above described property". The term "profits", as used in this context, does not refer generally to all business profits, but instead connotes an interest in real property. *V. DiFrancesco & Sons v. West Chestnut Realty of Haverford, Inc. (In re West Chestnut Realty of Haverford, Inc.)*, 173 B.R. 322, 324 (E.D. Pa. 1994) (*citing In re Majestic Motel Assoc.*, 131 B.R. 523, 525 (Bankr. D. Me. 1991)).

3

> "Thus, 'profits' refers to the income generated from the land itself, 'the produce of the soil,' but not the income produced as a result of the operation of a business on the mortgaged property." *Id.* (*quoting Detroit Trust Co. v. Detroit City Serv. Co.*, 262 Mich. 14, 247 N.W. 76, 85 (Mich. 1933) and *citing In re Zeeway Corp.*, 71 B.R. at 211) (gate receipts not profit since income was derived not from the real property, but from the business conducted thereon); *In re Corner Pockets of Southwest, Inc.*, 85 B.R. 559, 563 (Bankr. D. Mont. 1988) (funds generated by debtor's business not cash collateral since income arose not from land but from services provided on the property.)). "Defined in this way, 'profit' is the direct descendent of the *profit a prendre* at common law." *Id*. The funds generated from debtor's day-care services do not come within these definitions. Accordingly, the court holds that funds generated from debtor's business activity in caring for small children are not cash collateral under the Deed of Trust. *See HUD v. Hillside Assoc. Ltd. P'ship (In re Hillside Assoc. Ltd. P'ship)*, 121 B.R. 23, 24 (9th Cir. BAP 1990) (holding funds paid for care of overnight nursing home patients is not within scope of "rents, profits, income and charges of whatsoever sort" clause).
>
> CIT also argues that income generated from post-petition operation of a day-care on the property is included within the scope of the "[a]ll of Debtor's rights, title and interest in and to the rental, profit and income from the Real Property" clause in the Security Agreement and UCC Financing Statements. Debtor argues that scope of the clauses is limited to income generated directly from real property.
>
> . . . Courts in other jurisdictions have held that "[t]he *Zeeway* holding with respect to the scope of a "rents, profits and income" clause applies equally to a security interest under a U.C.C. security agreement as it does to a security interest under a Deed of Trust." *In re Corner Pockets of Southwest, Inc.*, 85 B.R. 559, 563 (Bankr. D. Mont. 1988). For reasons previous discussed regarding the Deed of Trust, the court holds that funds generated from debtor's business activity are not cash collateral under the Security Agreement and UCC Financing Statements.

*CIT Small Business Lending Corp. v. Tiny Hands Day Care, Inc., (In re Tiny Hands Day Care, Inc.)*, No. 09-37632-DOT, Order at 4-5 (Bankr. E.D. Va. Jan. 5, 2010).

**2. Revenue.**

1. The Secured Parties incorrectly assert they are secured by revenues.

2. The deeds of trust's interest in revenues is limited to that generated from real property. Debtors assert that revenues are not generated from real property, but rather services rendered pursuant to the Monthly Care Contracts.

3. The assignments of rent's interest in revenues is limited to that arising out of a sale, lease, or other disposition of real property. Again, Debtors assert that revenues are not generated from their real property, but rather from services rendered pursuant to the Monthly Care Contracts.

4. Assuming arguendo that the U.C.C. security agreements create interests in revenue, all prepetition revenue was used to pay bills, and postpetition revenue is not cash collateral because it is cut off by Bankruptcy Code § 552. *See* 11 U.S.C. § 552; *see also* Debtor's Memorandum § II at 6-7.

5. Moreover, as discussed in Judge Tice's order in the preceding section, security interests in "income, whether by deeds of trust or U.C.C. security agreements, are not cash collateral. *See supra* § C(1).

**3. Accounts, Contract Rights, and Accounts Receivable.**

6. Assuming arguendo that the Commercial Security Agreement has an interest in accounts, contract rights, or accounts receivable, all prepetition interests were used to pay bills, and postpetition interests are not cash collateral because they are cut off by Bankruptcy Code § 552. *See id.*

**D.     The Secured Parties are adequately protected by replacement liens.**

7.      The Court must value the Secured Parties interest in cash collateral and consider the debtors' proposed adequate protection before the court may authorize any use of cash collateral. *See SI Grand Traverse LLC*, 450 B.R. 703, 705 (Bankr. W.D. Mich. 2011).

**1. The value of the cash collateral is nominal.**

8.      Debtors assert the value of cash collateral for each entity (per Schedule B) is as follows:

|                      | TCR III | TCR IV              | TCR V  | TCR VI | Front Royal |
|----------------------|---------|---------------------|--------|--------|-------------|
| Cash                 | 250.00  | 1,069.45            | 250.00 | 0 [2]  | 587.27      |
| Rent                 | 0       | 0                   | 0      | 0      | 0           |
| Revenue              | 0       | 0                   | 0      | 0      | 0           |
| Accounts             | 0       | 0                   | 0      | 0      | 0           |
| Contract Rights      | 0       | 0                   | 0      | 0      | 0           |
| Accounts Receivable  | 0       | 77,250.35 [3]       | 0      | 0      | 0           |
|                      |         | (over 90 days old)  |        |        |             |

Accordingly, the Objection is much ado about very little money. A complicated cash collateral order is not needed because the Debtors had very little, if any, cash collateral. *See also* Debtor's Memorandum § IV(A) at 9.

**2. The Secured Parties' interests in Cash Collateral are adequately protected by replacement liens.**

9.      Debtors' proposed order provides for replacement liens as follows:

> **IT IS ORDERED** that notwithstanding Bankruptcy Code § 552, liens in cash collateral that existed at the commencement of the case shall transfer, attach, and become replacement liens in post-petition cash collateral, in the same amount, and with the same extent, validity and priority, that existed at the time of the filing of the bankruptcy petition;

---

[2] Although TCR VI, Inc. is the account holder of Wells Fargo account # 1896, Debtor believes the funds in this account belong to TCR IV, Inc. (the last entity with a prepetition deposit into this shared depository account). Therefore, cash in account # 1896 is more properly reported on the schedules of TCR IV.

[3] TCR IV's account receivable balance is over 90 days old and may not be collectible.

Therefore, the Secured Parties are not harmed if the Debtors use the cash collateral to continue operations because operations will generate cash in which the Secured Parties have replacement liens.  *See* Debtor's Memorandum § III at 8-9.

**E.     Even if the Secured Parties have interests in Cash Collateral that are decreasing, the Court should allow the Debtors to use Cash Collateral under the equities of the case.**

10.     The well-being of the elderly patients at the assisted living facility is of paramount importance to the Debtors.

11.     The relief requested in the Objection is over-reaching, unreasonable, and draconian.  Their prayer for relief requests that the Court deny Debtors the ability to use any cash collateral (thereby forcing the facility to immediately shut-down and displace approximately 85 elderly patients); or force the Debtors into onerous budgetary constraints and reporting requirements, improve the Secure Parties position by giving them liens on <u>all</u> postpetition cash, and requiring adequate protection payments in the amount of all income in excess of monthly essential operating expenses.

12.     Moreover, the proposed order that the Secured Parties presented to the Debtors would require continual Court involvement.  The Debtors would potentially require the Court's involvement anytime one of the five Debtor's actual spending is more than 5% of any budgetary line item, and to adjudicate what are "essential" operating expenses.  All this to protect a nominal amount of cash collateral.

**WHEREFORE**, Debtors respectfully request that the Court enter the Debtors' proposed final order, and for such other and further relief as the Court deems just and proper.

Date: January 8, 2016                                TCR III, INC., TCR IV, INC.,
                                                     TCR V, INC., TCR VI, INC., and
                                                     AMERICA HOUSE ASSISTED LIVING OF
                                                       FRONT ROYAL, L.L.C.,
                                                     by Proposed Counsel

/s/ John C. Smith
Roy M. Terry, Jr., VSB No. 17764
William A. Gray, VSB No. 46911
John C. Smith, VSB No. 44556
SANDS ANDERSON PC
P.O. Box 1998
Richmond, Virginia 23218-1998
Telephone: 804.648.1636
*Proposed Counsel for the Debtors*

### CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of January, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties who receive ECF notification, including:

> Donald F. King on behalf of Creditors TC10 Grantor Trust and TS Cambridge Grantor Trust; donking@ofplaw.com
>
> Alexander McDonald Laughlin on behalf of Creditor TC10 Grantor Trust and TS Cambridge Grantor Trust; alex.laughlin@ofplaw.com
>
> Bradley David Jones on behalf of U.S. Trustee Judy A. Robbins; bradley.d.jones@usdoj.gov
>
> Judy A. Robbins; ustpregion04.ax.ecf@usdoj.gov
>
> Thomas W. Waldrep, Jr. on behalf of Interested Party Meridian Senior Living, LLC; bankruptcy@wcsr.com

                                                     /s/ John C. Smith

W3250800